STATE OF CONNECTICUT *v.* GEORGE CAVROS
(11863)

PETERS, C. J., DANNEHY, SANTANIELLO, BRENNAN and S. FREEDMAN, Js.

Argued March 6—decision released June 25, 1985

*Nicholas P. Cardwell,* with whom, on the brief, was *James C. Wing, Jr.,* for the appellant (defendant).

*Susann E. Gill,* assistant state's attorney, with whom, on the brief, were *John Bailey,* state's attorney, and *Herbert Appleton,* assistant state's attorney, for the appellee (state).

SANTANIELLO, J. The defendant, George Cavros, was tried before a jury of twelve on an indictment for murder. The jury returned a verdict of guilty of the lesser included offense of manslaughter in the first degree under General Statutes § 53a-55 (a) (1), and the defendant was sentenced to a term of not less than ten nor more than twenty years imprisonment. The defendant appeals from the judgment of conviction claiming error in the trial court's denial of his motion for a mistrial, grounded on certain allegedly prejudicial remarks made by the court to the jury. We find no error.

The facts and circumstances surrounding the offense are not in dispute. The defendant and the victim were friends. On the evening of December 4, 1980, they were drinking in a bar located on Union Place in Hartford

with several of their social companions. A fight broke out during which the victim struck the defendant, breaking his glasses. The group then split up and the defendant left the bar unaccompanied.

Later that night, the defendant was driving along Union Place and saw the victim and three others. He stopped the car, got out and approached the group. Another fight took place and the victim again struck the defendant, resulting in the loss of a lens from the defendant's glasses. Two men restrained the defendant as the victim struggled to reach him. The men forced the defendant head first back into his car, where the defendant grabbed a gun, turned and fired, killing the victim. At trial, the defendant did not deny that he had shot and killed the victim, but claimed that the shooting was justified because he had acted in self-defense. See General Statutes § 53a-19.[1]

---

[1] "[General Statutes] Sec. 53a-19. USE OF PHYSICAL FORCE IN DEFENSE OF PERSON. (a) Except as provided in subsections (b) and (c) a person is justified in using reasonable physical force upon another person to defend himself or a third person from what he reasonably believes to be the use or imminent use of physical force, and he may use such degree of force which he reasonably believes to be necessary for such purpose; except that deadly physical force may not be used unless the actor reasonably believes that such other person is (1) using or about to use deadly physical force, or (2) inflicting or about to inflict great bodily harm.

"(b) Notwithstanding the provisions of subsection (a), a person is not justified in using deadly physical force upon another person if he knows that he can avoid the necessity of using such force with complete safety (1) by retreating, except that the actor shall not be required to retreat if he is in his dwelling, as defined in section 53a-100, or place of work and was not the initial aggressor, or if he is a peace officer or a private person assisting such peace officer at his direction, and acting pursuant to section 53a-22, or (2) by surrendering possession of property to a person asserting a claim of right thereto, or (3) by complying with a demand that he abstain from performing an act which he is not obliged to perform.

"(c) Notwithstanding the provisions of subsection (a), a person is not justified in using physical force when (1) with intent to cause physical injury or death to another person, he provokes the use of physical force by such other person, or (2) he is the initial aggressor, except that his use of physical force upon another person under such circumstances is justifiable if he

At trial, the jury was instructed on murder, self-defense, and the lesser included offenses of first and second degree manslaughter and criminally negligent homicide. The court specifically charged the jury to consider the proof with regard to each offense, beginning with the offense charged, murder, and, if that crime were not proved, then to move on to consider each of the lesser included offenses in descending order of seriousness. The court concluded its jury charge at 3:55 p.m. on October 26, 1982, and the jury retired to commence its deliberations. Later that afternoon, the court received a note from the jury, with the time notation of 4:50 p.m., in which the jury requested a "copy of the Court's definition" of murder, manslaughter in the first degree, manslaughter in the second degree, criminal negligence and self-defense, and the "[e]ntire testimony" of six witnesses. The court summoned the jury at 5:14 p.m. and stated that it was just about to excuse the jury for the day when it received the above request. The court informed the jury that it had not "had full opportunity to discuss [the note] with counsel," and that while "portions of the Court's charge may be repeated and may be re-read to you . . . [u]nder our procedures the charge itself, or . . . the statutory basis for the charge is not before you in the jury room." During a colloquy with the jury foreman, the court repeated its earlier instruction "that the charge explained all of these offenses in descending order. And your first function under the Court's charge is to take up the charge of murder." Indicating that the jury's "request may be premature at this point," the court suggested that the jury reconsider its needs and stated that "[i]f it is your wish to have the murder charge re-read, certainly the Court can do so."

withdraws from the encounter and effectively communicates to such other person his intent to do so, but such other person notwithstanding continues or threatens the use of physical force, or (3) the physical force involved was the product of a combat by agreement not specifically authorized by law."

Similarly, with regard to the witnesses' testimony specified in the note, the court informed the jury that while it would be possible for the court reporter to review her notes and read the desired testimony back to the jury, this procedure would "take some time." The court suggested that "at this stage of deliberations . . . you attempt to use your own recollection of that testimony since the testimony should be fresh in your mind . . . and attempt to refresh each other's recollection." Should this attempt at recollection be unavailing, the court indicated its willingness to "accede to [the jury's] request."

The court concluded its remarks by telling the jury that "unless you advise me otherwise tomorrow morning, I will re-instruct you with regard to the charge of murder." The court then asked the jury "not to commence your deliberations before that but you can discuss amongst yourselves . . . just exactly what testimony it is that you wish and . . . whether this stands as your request or whether perhaps you want to make additions or perhaps deletions from those requests . . . tomorrow morning." Shortly thereafter, at 5:25 p.m., the jury was excused for the night.

After the jury had departed, defense counsel raised an objection to the remarks the court had made in response to the jury's request. He was troubled by the court's assumption that "obviously [the jury] have not reached a point where they are discussing any of the lesser included offenses," and objected to the court's decision to recharge only as to the offense of murder when the jury had also requested reinstruction on the three lesser included offenses and self-defense. Since it was possible that the jury, in their first hour of deliberations, had already reached a verdict of not guilty of the charged offense, he argued, it "would be prejudicial" to the defendant to recharge the jury on murder only and send it back for further deliberation.

The state's attorney expressed his willingness to have the court reinstruct the jury on all the offenses in accordance with its request, and the court indicated that the defense's point was "well taken" and that he was "inclined to grant that request." The court concluded that it would "inquire again tomorrow. And if anyone, any member of the panel wants to hear the charge on the offenses certainly I will give it to them."

The following morning, October 27, 1982, the defense filed a written motion for a mistrial, alleging that the court's response to the jury's request the previous afternoon was "irreparably prejudicial to the defendant." The court conceded that "a correcting instruction or a correcting comment is necessary under the circumstances," but refused to declare a mistrial. The defendant took an exception.

When the jury entered the courtroom at 10:50 a.m., the court stated that it had received a second note from it, bearing the time notation of 9:40 a.m., which read as follows: "We are withdrawing our earlier request for testimony. Please recharge us on murder (including the definition of intent) and self defense." After reading the note into the record, the court stated that it wanted "to make some comments which I was going to make before this note was given to me." The court then made certain curative remarks regarding his response to the jury's original request.[2]

---

[2] The court's comments were as follows: "I should mention, first of all, that generally speaking it is not for the Court or for counsel to second guess your requests. When the jury makes a request and it is a reasonable one, that request should be acceded to. And I did not want to leave you with the impression—I think I might have used the words to the effect that your request might be premature. I suggested to you you should be at some point in your deliberations. I might have left that impression with you. And I want to indicate it was not my intention to suggest to you that you should be at any particular point in your deliberations at any time. We, neither Court nor counsel, can speculate as to where you are in deliberations. We do not want to know what particular point you are in your deliberations.

The court proceeded to question the jury foreman about the jury's revised request. The court asked whether the second note was "prompted by the Court's comments of yesterday afternoon directly or indirectly," and the foreman responded in the affirmative. The court then instructed the jury "to ignore my comments with respect to limiting your request to the charge of murder. . . . In other words, I'm asking you to disregard my comments as to where you were in your deliberations. And I'm indicating to you that your request which was made yesterday is going to be taken care of at this time." In response to further inquiry by the court, the foreman indicated that the jury's withdrawal of its earlier request for certain testimony was also prompted by the court's remarks. Again, the court told the jury "to ignore my comments of yesterday with regard to the propriety of your requests for either the charge or the testimony" and stated that the specified testimony would be reread.[3]

The court concluded its comments and questioning at 11:01 a.m., at which time the jury was excused from

Those are matters which concern the process of deliberation. And they are not matters that either the Court or counsel have a right to speculate about or to inquire about.

"So that you will recall we remained in session after you left yesterday. And the matter was discussed with counsel. And it was the feeling of counsel that your requests, your original requests should be acceded to. And I concur with counsels' suggestion for the reason that I felt that my comment with regard to the propriety of that request may perhaps have misled you."

[3] Later on October 27, 1982, at 12:06 p.m., the jury foreman, speaking on behalf of the entire panel, withdrew "our earlier request to have all the testimony read to us at this time." Because of the foreman's responses to the court's questions that morning, the court expressed concern that "the withdrawal of your request may have been prompted by something the Court might have said or implied yesterday." The foreman assured the court that "that is not the case. At the time we made the request we feel now that we were disorganized, and we are more organized now . . . . [W]e will want specific testimony re-read as we require it . . . ." After the jury was excused to continue its deliberations, counsel and the court agreed to reread testimony as the jury requested it, and this procedure was communicated to the jury.

the courtroom for ten minutes. After a brief discussion between counsel and the court, during which the defendant's attorney expressed his feeling "that what has just been said to the jury now has not corrected the prejudice that was created last night," the jury was summoned at 11:11 a.m. The court then recharged the jury on all the offenses and self-defense, in accordance with its original request.

The jury's deliberations continued over the next two days, during which it requested and reheard the partial or complete testimony of six witnesses, including that of the defendant. In addition, the jury requested and received reinstruction on intent, reasonable doubt and self-defense. On October 29, 1982, at approximately 4:44 p.m., the jury announced its verdict of guilty of first degree manslaughter under General Statutes § 53a-55 (a) (1).

The defendant's sole claim on appeal is that the court erred in denying his motion for a mistrial. He argues that the court's comments of October 26, 1982, in response to the jury's initial request to be recharged on all the offenses, were irreparably prejudicial and entitle him to a new trial. We disagree. The well established rule in our state is that a mistrial should be granted only where it is apparent to the court that the defendant has been denied the opportunity for a fair trial due to some occurrence that took place during trial. *State* v. *Palmer,* 196 Conn. 157, 163, 491 A.2d 1075 (1985); *State* v. *Binet,* 192 Conn. 618, 628, 473 A.2d 1200 (1984); *State* v. *Grayton,* 163 Conn. 104, 112, 303 A.2d 246, cert. denied, 409 U.S. 1045, 93 S. Ct. 542, 34 L. Ed. 2d 495 (1972). Under the circumstances of this case, the comments of which the defendant complains did not deprive him of a fair trial.

The defendant claims that the court's remarks were prejudicial in two respects. His primary concern is that

"the jury could have understood the comments to be an intimation of the court's belief that the [d]efendant was guilty of murder." He further maintains that by focusing on the offense of murder, the court may have given the jury the impression that the crime was to be considered independently of self-defense, when in fact "the issue of whether the [d]efendant's actions were justified was an element of the State's burden of proof."

Although the defendant is certainly correct that the trial court in a criminal case must not direct or advise the jury to return a guilty verdict; General Statutes § 54-89; *State* v. *Taylor,* 196 Conn. 225, 232, 492 A.2d 155 (1985); *State* v. *Storlazzi,* 191 Conn. 453, 465, 464 A.2d 829 (1983); we find no such improper advice or direction in the court's remarks. The court's comments were essentially based on its original jury instruction regarding the order in which the jury should properly consider the crime charged and its lesser included offenses. The defendant did not challenge this portion of the court's charge at trial, nor does he contest its accuracy on appeal. While the court may have suggested that the jury should not yet be considering the lesser offenses, the fact that "murder" was included in the jury's initial request for reinstruction belies any suggestion that it had already reached a verdict of not guilty as to that charge.

The court's remarks were in response to a broad and extensive request for reinstruction and testimony that the jury submitted after less than one hour of deliberation. In a case that presented a total of five possible verdicts, the court was merely attempting to guide the jury as to how it should proceed in its deliberations and isolated the offense charged, murder, as the first issue for its consideration. The court's impression that such guidance was necessary is supported by the jury foreman's later assertion that "[a]t the time we made the request . . . we were disorganized . . . ." To the

extent that the court's remarks focused on murder and suggested that the jury should not have progressed beyond a certain point in its deliberations, the curative instruction given the following morning served to dispel any possible confusion generated by the court's comments of the previous day. The court repeatedly told the jury to disregard its earlier comments and, absent a fair indication to the contrary, we presume that these instructions were followed. *State* v. *Washington*, 182 Conn. 419, 429, 438 A.2d 1144 (1980). Moreover, the jury was ultimately recharged exactly as it had requested, and the defendant concedes that these supplemental instructions were correct. Since we consider the supplemental charge together with the allegedly erroneous original comment in determining prejudicial impact; *State* v. *Topciu*, 183 Conn. 1, 6, 438 A.2d 803 (1981); *State* v. *Reed*, 174 Conn. 287, 308, 386 A.2d 243 (1978); we conclude that the defendant was not harmed by the court's remarks.

The defendant's contention that the court's offer to recharge only on murder may have misled the jury to believe that the offense should be considered separate and apart from the issue of self-defense is similarly without support in the record. The court's original charge on self-defense, which was twice repeated upon the jury's request and is not challenged by the defendant, correctly informed the jury that "the State has the burden of proving beyond a reasonable doubt that the elements of that defense as I have explained them to you are not present in this case and that the defense is not a valid one." See General Statutes § 53a-12. Even before the court had given its curative instructions, the jury submitted a second note requesting reinstruction on "murder (including the definition of intent) and self defense." Thus, the jury clearly understood that the offense and the justification were to be considered

together. Under these circumstances, we conclude that the court's comments were not misleading.

There is no error.

In this opinion the other judges concurred.