******************************************************

The "officially released" date that appears near the beginning of each opinion is the date the opinion will be published in the Connecticut Law Journal or the date it was released as a slip opinion. The operative date for the beginning of all time periods for filing postopinion motions and petitions for certification is the "officially released" date appearing in the opinion.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Reports and Connecticut Appellate Reports. In the event of discrepancies between the advance release version of an opinion and the latest version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest version is to be considered authoritative.

The syllabus and procedural history accompanying the opinion as it appears in the Connecticut Law Journal and bound volumes of official reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced and distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.

******************************************************

# STATE OF CONNECTICUT *v.* DURANTE D. BEST
## (SC 20278)

Robinson, C. J., and Palmer, McDonald, D'Auria,
Mullins, Kahn and Ecker, Js.*

*Syllabus*

Convicted of murder, attempt to commit murder, and assault in the first
degree in connection with the shooting of his girlfriend's daughter, O,
and O's roommate, J, the defendant appealed to this court, claiming
that the trial court had abused its discretion in admitting into evidence
four photographs depicting the bloody interior of the car in which O
and J drove to the hospital after the shooting. On the day of the shooting,
O and J arrived at the house where the defendant and his girlfriend lived
and found them arguing inside a locked bedroom. O and J demanded
that the defendant open the bedroom door. When he did, he shot O and
J each once in the chest. O and J fled to O's car and drove to the hospital,
where J died as a result of her injuries. At trial, the state introduced
into evidence, over defense counsel's objection, the four photographs
as full exhibits. On appeal to this court, the defendant claimed that the
trial court had improperly admitted the photographs because they were
not relevant to the crimes with which he was charged and, alternatively,
because they were unduly prejudicial insofar as their graphic nature
had a tendency to arouse the jurors' passions. *Held* that the trial court
did not abuse its discretion in admitting into evidence the photographs
depicting the bloody interior of the car that O and J used to flee the
shooting: the photographs were relevant because the amount of blood
loss that O and J suffered immediately after the shooting and the corres-
ponding severity of their wounds were probative of certain elements of
the charged offenses, namely, whether the wounds the defendant
inflicted were grievous enough to cause J's death and serious physical
injury to O, and the defendant's intent as to those offenses; moreover,
the photographs were relevant because they corroborated O's testimony
at trial about the events that transpired immediately following the shoot-
ing; furthermore, the trial court did not abuse its discretion in concluding
that the probative value of the photographs outweighed their prejudi-
cial effect.

Argued February 21—officially released October 14, 2020**

*Procedural History*

Substitute information charging the defendant with
two counts each of the crimes of attempt to commit
murder and assault in the first degree, and with one
count each of the crimes of murder and criminal posses-
sion of a firearm, brought to the Superior Court in the
judicial district of Fairfield and tried to the jury before
*Rodriguez, J.*; verdict and judgment of guilty, from
which the defendant appealed to this court, which trans-
ferred the appeal to the Appellate Court, *Lavine, Mul-
lins* and *Harper, Js.*, which reversed in part the
judgment of the trial court and remanded the case for
a new trial on the murder charge and one count each
of the attempt to commit murder and assault in the
first degree charges; thereafter, the case was tried to
the jury before *Richards, J.*; verdict and judgment of
guilty, from which the defendant appealed to this court.
*Affirmed.*

*Lisa J. Steele*, assigned counsel, for the appellant
(defendant).

*Kathryn W. Bare*, assistant state's attorney, with whom, on the brief, were *John C. Smriga*, former state's attorney, and *Joseph Corradino*, senior assistant state's attorney, for the appellee (state).

*Opinion*

ECKER, J. The sole issue in this appeal is whether the trial court abused its discretion in admitting into evidence four photographs that depicted the bloody interior of a motor vehicle used to transport to the hospital two victims who were shot by the defendant, Durante D. Best. The defendant claims that the photographs were irrelevant to the criminal charges against him and that, even if relevant, their probative value was outweighed by their prejudicial effect on the jury. We conclude that the trial court did not abuse its discretion in admitting the photographs and affirm the judgment of conviction.

The jury reasonably could have found the following facts. At the time of the shooting, the defendant lived in a house on Jefferson Street in Bridgeport with his girlfriend, Erika Anderson (Erika), his stepbrother, Joseph Myers, and two other individuals—Jackie Figueroa and Nelson Stroud. Around mid-afternoon on May 4, 2006, Erika's daughter, Octavia Anderson (Octavia), arrived at the house with her three year old son and Octavia's roommate, Rogerlyna Jones, to pick up her mother for an outing to a carnival. Jones went up to the house and knocked on the door to retrieve Erika, while Octavia stayed in the car with her son. Jones soon returned to the car, however, and informed Octavia that no one was answering the door. Octavia exited the car and encountered Stroud, who told her that the defendant and Erika were inside the house having an argument. Both Octavia and Jones then approached the house, where they found the door unlocked. They entered the kitchen and heard the defendant and Erika arguing in the bedroom.

Octavia called out to her mother and heard her respond, but the door to the bedroom remained closed. Octavia found a large roll of plastic wrap in the kitchen, which she used to bang on the bedroom door while telling the defendant and Erika to "open up the door." Octavia continued to bang on the bedroom door and yelled out to the defendant, "[if] [y]ou don't open this door, I'm gonna fuck you up." Jones added "we've got backup . . . ." The defendant opened the door and shot Octavia and Jones each once in the chest. Both women then ran outside toward Octavia's car, and Erika fled after them. Erika watched as the women drove away. When Erika turned around, she faced the defendant, who then shot her once in the chest.

Octavia drove herself and Jones to Bridgeport Hospital, stopping at one point to ask a friend for help. Both Octavia and Jones were bleeding copiously during the ride to the hospital due to the severity of their wounds. All three victims suffered substantial and life threatening injuries as a result of the gunshot wounds inflicted by the defendant. Although Octavia and Erika ultimately survived, Jones was not so fortunate—she died of her

injuries shortly after arriving at Bridgeport Hospital.

Following a jury trial, the defendant was convicted of murder in violation of General Statutes § 53a-54a (a), two counts of attempted murder in violation of General Statutes §§ 53a-49 and 53a-54a (a), two counts of assault in the first degree in violation of General Statutes § 53a-59 (a) (1), and criminal possession of a firearm in violation of General Statutes § 53a-217 (a). On appeal to the Appellate Court, the defendant claimed that the trial court improperly denied his request for a jury instruction on self-defense. See *State* v. *Best*, 168 Conn. App. 675, 676–77, 146 A.3d 1020 (2016), cert. denied, 325 Conn. 908, 158 A.3d 319 (2017). The Appellate Court concluded that the defendant was entitled to a self-defense instruction as to Octavia and Jones but was not entitled to the instruction as to Erika because "[n]one of the evidence adduced at trial indicate[d] that Erika posed a threat to the defendant." Id., 688. Accordingly, the Appellate Court reversed the defendant's conviction as to the murder of Jones, the attempted murder of Octavia, and the assault in the first degree of Octavia, and remanded the case for a new trial on those charges. Id., 689. The Appellate Court affirmed the defendant's judgment of conviction in all other respects. Id.

At the defendant's second jury trial on the murder, attempted murder, and first degree assault charges, the state admitted into evidence various photographs of the crime scene, many of which depicted the victims' blood. The state also moved to admit into evidence four photographs of the bloody interior of the car that Octavia used to drive herself and Jones to the hospital following the shooting. These photographs depict the front compartment of Octavia's Dodge Stratus, where blood can be seen on the seats, console, cup holder, and footwell. Defense counsel objected to the admission of the photographs of the automobile's interior, arguing that they were "inflammatory and not of any probative value, and ask[ing] that they . . . not be entered into [evidence]." The state responded that the photographs were "not particularly graphic by the standards of this courtroom, and they are probative of the nature of the injuries sustained by the two ladies who arrived in the vehicle." The trial court overruled the defendant's objection and admitted the photographs into evidence as full exhibits. At the conclusion of the trial, the jury found the defendant guilty of the crimes charged. The trial court sentenced the defendant to a total effective sentence of forty years imprisonment, to be served consecutive to the sentence imposed on the counts pertaining to Erika that remained intact following his first jury trial. This appeal followed.

On appeal, the defendant claims that the four photographs of the bloody interior of Octavia's car were not relevant to the crimes with which he was charged and, therefore, improperly were admitted into evidence.

Alternatively, the defendant claims that the photographs were unduly prejudicial because their graphic nature had a tendency "to inflame the jury's passions or tug on [the jurors'] sympathies." The defendant claims that the alleged evidentiary error was harmful because, in the absence of the admission of the photographs, "the jury may have found reasonable doubt in the varying accounts of the shooting, believed [the defendant's] testimony that he believed he was acting in self-defense, or believed that he fired the revolver recklessly or negligently . . . ."

I

We first address whether the challenged photographs were relevant.[1] "Relevant evidence is evidence that has a logical tendency to aid the trier in the determination of an issue. . . . Evidence is relevant if it tends to make the existence or nonexistence of any other fact more probable or less probable than it would be without such evidence." (Internal quotation marks omitted.) *State* v. *Wilson*, 308 Conn. 412, 429, 64 A.3d 91 (2013); see also Conn. Code Evid. § 4-1 (" '[r]elevant evidence' means evidence having any tendency to make the existence of any fact that is material to the determination of the proceeding more probable or less probable than it would be without the evidence"). Thus, "photographic evidence is admissible where the photograph has a reasonable tendency to prove or disprove a material fact in issue or shed some light upon some material inquiry." (Internal quotation marks omitted.) *State* v. *Kelly*, 256 Conn. 23, 64, 770 A.2d 908 (2001). The evidence need not be "essential to the case in order for it to be admissible. . . . In determining whether photographic evidence is admissible, the appropriate test is relevancy, not necessity." (Citations omitted.) Id., 65. "The trial court has wide discretion to determine the relevancy of evidence and [e]very reasonable presumption should be made in favor of the correctness of the court's ruling in determining whether there has been an abuse of discretion." (Internal quotation marks omitted.) *State* v. *Pena*, 301 Conn. 669, 674, 22 A.3d 611 (2011).

At trial, the state bore the burden of proving beyond a reasonable doubt, among other things, that the defendant caused the death of Jones in violation of § 53a-54a (a) and inflicted "serious physical injury" on Octavia in violation of § 53a-59 (a) (1). "Serious physical injury" is defined as "physical injury which creates a substantial risk of death, or which causes serious disfigurement, serious impairment of health or serious loss or impairment of the function of any bodily organ . . . ." General Statutes § 53a-3 (4). The amount of blood loss suffered by Octavia and Jones during their brief journey to the hospital immediately after the shooting was indicative of the severity of their gunshot wounds and had a tendency to prove that these wounds were grievous enough to cause the death of Jones and serious physical

injury to Octavia.[2] See *State* v. *DeJesus*, 194 Conn. 376, 384, 481 A.2d 1277 (1984) (holding that photographs of wounds suffered by victims were relevant "to the cause and manner of the death of the two victims"); *State* v. *Rivera*, 169 Conn. App. 343, 378, 150 A.3d 244 (2016) ("[a]utopsy photographs depicting the wounds of victims are independently relevant because they may show the character, location and course of the [weapon]" (internal quotation marks omitted)), cert. denied, 324 Conn. 905, 152 A.3d 544 (2017); *State* v. *Osbourne*, 162 Conn. App. 364, 371–72, 131 A.3d 277 (2016) (photographs depicting victim's blood loss and bloody clothing were relevant, among other reasons, to establish that victim suffered physical injury).

Although the connection is more tenuous, the trial court may also have considered the photographs relevant to the defendant's criminal intent. With respect to the crimes of murder and attempted murder, the state bore the burden of proving beyond a reasonable doubt that the defendant acted with the specific intent to cause the deaths of Jones and Octavia. See, e.g., *State* v. *Bennett*, 307 Conn. 758, 765–66, 59 A.3d 221 (2013) ("[i]n order to be convicted under our murder statute, the defendant must possess the specific intent to cause the death of the victim" (internal quotation marks omitted)); *State* v. *Murray*, 254 Conn. 472, 479, 757 A.2d 578 (2000) ("[a] verdict of guilty of attempted murder requires a finding of the specific intent to cause death"). With respect to the crime of assault in the first degree, the state bore the burden of proving beyond a reasonable doubt that the defendant shot Octavia with the specific intent to cause her serious physical injury. See, e.g., *State* v. *Nash*, 316 Conn. 651, 668, 114 A.3d 128 (2015) ("[i]ntentional assault in the first degree in violation of § 53a-59 (a) (1) requires proof that the defendant (i) had the intent to cause serious physical injury to a person, (ii) caused serious physical injury to such person or to a third person, and (iii) caused such injury with a deadly weapon or dangerous instrument").

"As we have observed on multiple occasions, [t]he state of mind of one accused of a crime is often the most significant and, at the same time, the most elusive element of the crime charged. . . . Because it is practically impossible to know what someone is thinking or intending at any given moment, absent an outright declaration of intent, a person's state of mind is usually [proven] by circumstantial evidence . . . ." (Internal quotation marks omitted.) *State* v. *Bonilla*, 317 Conn. 758, 766, 120 A.3d 481 (2015). Intent to cause death or serious physical injury "may be inferred from the type of weapon used, the manner in which it was used, the type of wound inflicted and the events leading to and immediately following the [crime]. . . . Furthermore, it is a permissible, albeit not a necessary or mandatory, inference that a defendant intended the natural consequences of his voluntary conduct." (Internal quotation

marks omitted.) *State* v. *Gary*, 273 Conn. 393, 407, 869 A.2d 1236 (2005). The extent and severity of injuries often are used as indirect proof of intent. See *State* v. *Reynolds*, 264 Conn. 1, 101, 836 A.2d 224 (2003) (holding that autopsy photographs were admissible in penalty phase of capital case because they "were relevant to the state's claim that the defendant had intentionally inflicted extreme psychological pain or torture on [the victim] beyond that necessary to accomplish the killing" (emphasis omitted)), cert. denied, 541 U.S. 908, 124 S. Ct. 1614, 158 L. Ed. 2d 254 (2004); *State* v. *Doehrer*, 200 Conn. 642, 650, 513 A.2d 58 (1986) (photograph of victim's injuries was "independently relevant to the issue of intent," which "was a material element of both the murder and assault charges and it was the state's burden to prove such intent beyond a reasonable doubt"); *State* v. *Epps*, 105 Conn. App. 84, 96, 936 A.2d 701 (2007) (trial court properly admitted photographs of victim's injuries because "[t]he seriousness of the injuries would be relevant in proving the defendant's intent to disfigure or even his intent to kill, which was an element of the charge of attempt to commit murder"), cert. denied, 286 Conn. 903, 943 A.2d 1102 (2008); *State* v. *Osbourne*, supra, 162 Conn. App. 372 (photographs depicting victim's blood loss and bloody clothing were relevant to issue of "whether the defendant possessed the requisite intent of the crime charged").

Lastly, the photographs of the interior of Octavia's vehicle were relevant because they corroborated Octavia's testimony about the events that transpired immediately following the shooting. See, e.g., *State* v. *Doehrer*, supra, 200 Conn. 649 (photograph of victim's injuries was admissible because it "tended to corroborate" testimony of victim and her mother); *State* v. *LaBreck*, 159 Conn. 346, 350–51, 269 A.2d 74 (1970) (various photographs, including one of victim's blood splatter on kitchen floor and counter, were relevant "to illustrate to the jury the conditions described in the testimony of the several witnesses concerning the aspects of the proof with which they were concerned"); *State* v. *Michael G.*, 107 Conn. App. 562, 573, 945 A.2d 1062 (photographs were relevant because they "tended to corroborate factual details surrounding the defendant's commission of the sexual assaults"), cert. denied, 287 Conn. 924, 951 A.2d 574 (2008); *State* v. *Scuilla*, 26 Conn. App. 165, 171, 599 A.2d 741 (1991) (photographs of victim were relevant to corroborate testimony of "two witnesses who saw the incident while driving on the highway, as well as the medical examiner's explanation of the cause of death"), cert. denied, 221 Conn. 908, 600 A.2d 1362 (1992). Accordingly, we reject the defendant's claim that the photographic evidence was irrelevant to the crimes charged.

## II

Having determined that the challenged photographs

were relevant, we next address whether the trial court properly concluded that their probative value outweighed their prejudicial effect. "A potentially inflammatory photograph may be admitted if the court, in its discretion, determines that the probative value of the photograph outweighs the prejudicial effect it might have on the jury." *State* v. *Williams*, 227 Conn. 101, 111, 629 A.2d 402 (1993); see also Conn. Code. Evid. § 4-3 ("[r]elevant evidence may be excluded if its probative value is outweighed by the danger of unfair prejudice or surprise, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time or needless presentation of cumulative evidence").

"[A] trial court has broad discretion in weighing the potential prejudicial effect of a photograph against its probative value. . . . On appeal, we may not disturb . . . [the trial court's] finding absent a clear abuse of discretion." (Internal quotation marks omitted.) *State* v. *Satchwell*, 244 Conn. 547, 575, 710 A.2d 1348 (1998). "[B]ecause of the difficulties inherent in this balancing process . . . every reasonable presumption should be given in favor of the trial court's ruling. . . . Of course, [a]ll adverse evidence is damaging to one's case, but it is inadmissible only if it creates undue prejudice so that it threatens an injustice were it to be admitted. . . . [Accordingly] [t]he test for determining whether evidence is unduly prejudicial is not whether it is damaging to the [party against whom the evidence is offered] but whether it will improperly arouse the emotions of the jur[ors]." (Emphasis omitted; internal quotation marks omitted.) *State* v. *Jacobson*, 283 Conn. 618, 639, 930 A.2d 628 (2007); see also *State* v. *Kulmac*, 230 Conn. 43, 61, 644 A.2d 887 (1994) ("[t]he primary responsibility for making these [evidentiary] determinations rests with the trial court"). Such deference is warranted because the trial court, with "its intimate familiarity with the case, is in the best position to weigh the relative merits and dangers of any proffered evidence." *State* v. *Geyer*, 194 Conn. 1, 13, 480 A.2d 489 (1984); see also *State* v. *Saucier*, 283 Conn. 207, 218–19, 926 A.2d 633 (2007) (trial court is "vested with the discretion to admit or to bar . . . evidence based upon relevancy, prejudice, or other legally appropriate grounds related to the rule of evidence" that require trial court to make " 'judgment call' " involving "determinations about which reasonable minds may . . . differ").

The defendant contends that the photographs of the interior of Octavia's car are "inherently prejudicial" and, thus, inadmissible "because of their bloody imagery." This contention misapprehends the proper analysis. "[P]hotographs [that] have a reasonable tendency to prove or disprove a material fact in issue or shed some light upon some material inquiry are not rendered inadmissible simply because they may be characterized as gruesome." (Internal quotation marks omitted.) *State* v. *Epps*, supra, 105 Conn. App. 95; see *State* v. *Ross*, 230

Conn. 183, 277, 646 A.2d 1318 (1994) ("even gruesome photographs are admissible if they would prove or disprove a material fact in issue, or illuminate a material inquiry"), cert. denied, 513 U.S. 1165, 115 S. Ct. 1133, 130 L. Ed. 2d 1095 (1995); *State* v. *DeJesus*, supra, 194 Conn. 381 ("The great weight of authority is that photographs, even though gruesome, are admissible in evidence when otherwise properly admitted if they have a reasonable tendency to prove or disprove a material fact in issue or shed some light upon some material inquiry. . . . A photograph, the tendency of which may be to prejudice the jury, may be admitted in evidence if, in the sound discretion of the court, its value as evidence outweighs its possible prejudicial effect." (Citation omitted; internal quotation marks omitted.)). The question is not solely whether the evidence is gruesome, disturbing or otherwise "inherently" prejudicial but whether its prejudicial nature is undue or unfair, a question that requires the trial court to undertake the relativistic assessment of probative value versus prejudicial effect at the heart of § 4-3 of the Connecticut Code of Evidence.[3]

As we explained in part I of this opinion, the photographic evidence at issue was relevant to establish the severity of Jones' and Octavia's injuries, to prove the defendant's criminal intent, and to corroborate Octavia's version of events. The defendant's intent in particular was hotly disputed at trial in light of the defendant's testimony that he shot Octavia and Jones either accidentally or in self-defense. Although the probative value of the challenged photographs under the circumstances was somewhat attenuated; see footnote 2 of this opinion; we nonetheless cannot conclude that the trial court abused its discretion in determining that, on balance, their probative value outweighed their prejudicial effect. See, e.g., *State* v. *DeJesus*, supra, 194 Conn. 382 n.7 ("[w]here . . . much of the evidence in a case is such as to indicate that a crime was committed with extreme atrocity and violence, photographs, regardless of their gruesomeness, can add little to inflame or prejudice the jury" (internal quotation marks omitted)); see also *State* v. *Satchwell*, supra, 244 Conn. 576 (upholding trial court's admission into evidence of six photographs of victims "in accordance with the principle that the trial court is afforded broad leeway in determining whether the probative value of such evidence outweighs its prejudicial effect"); *State* v. *Doehrer*, supra, 200 Conn. 651 ("it was reasonable for the trial court to conclude that the admission of the photograph would not inflame the passions of the jurors or unduly prejudice the defendant" because "[t]he photograph was not gruesome, and the jury had already heard testimony concerning the more serious injuries inflicted upon the other members of the [victims'] family"); *State* v. *Osbourne*, supra, 162 Conn. App. 375 ("although the photographs admitted into evidence depicted blood

found at the scene and the victim's bloody clothing, the trial court's determination that they were more probative than prejudicial [did] not constitute an abuse of discretion").

The judgment is affirmed.

In this opinion the other justices concurred.

* The listing of justices reflects their seniority status on this court as of the date of oral argument.

** October 14, 2020, the date that this decision was released as a slip opinion, is the operative date for all substantive and procedural purposes.

[1] The state contends that the defendant did not raise a "straight relevance objection" in the trial court and, therefore, failed to preserve this claim for appellate review. This argument is without merit. "[T]he standard for the preservation of a claim alleging an improper evidentiary ruling at trial is well settled. . . . In order to preserve an evidentiary ruling for review, trial counsel must object properly" by "articulat[ing] the basis of the objection so as to apprise the trial court of the precise nature of the objection and its real purpose . . . . [T]he determination of whether a claim has been properly preserved will depend on a careful review of the record to ascertain whether the claim on appeal was articulated below with sufficient clarity to place the trial court on reasonable notice of that very same claim." (Internal quotation marks omitted.) *State* v. *Taylor G.*, 315 Conn. 734, 769–70, 110 A.3d 338 (2015). At trial, the defendant objected to the admission of the photographic evidence in part on the ground that it was "not of any probative value . . . ." Evidence that has "no probative value whatsoever" is "entirely irrelevant" because it does "nothing toward establishing the likelihood" of a fact in issue. (Internal quotation marks omitted.) *State* v. *Moody*, 214 Conn. 616, 628, 573 A.2d 716 (1990). By arguing that the photographic evidence was devoid of any probative value in the present case, the defendant plainly raised a relevance objection. Indeed, the state addressed the relevance of the evidence in its response to the defendant's objection, arguing, in pertinent part, that the photographs were "probative of the nature of the injuries sustained by the two ladies who arrived in the vehicle." We therefore conclude that the defendant functionally preserved his relevance claim. See *State* v. *Santana*, 313 Conn. 461, 468, 97 A.3d 963 (2014) ("although a party need not use the term of art applicable to the claim, or cite to a particular statutory provision or rule of practice to functionally preserve a claim, he or she must have argued the underlying principles or rules at the trial court level in order to obtain appellate review"); *State* v. *Paulino*, 223 Conn. 461, 476–77, 613 A.2d 720 (1992) (holding that defendant's objection that evidence was "unnecessary and harmful" sufficiently preserved claim that evidence was more prejudicial than probative, even though defendant "failed to incorporate the specific language that he . . . use[d] on appeal").

[2] We find no merit in the defendant's contention that the photographs at issue are irrelevant because they are not "crime scene photographs and/or autopsy or wound photographs taken elsewhere." Although crime scene or wound photographs might provide the most direct and salient evidence of the nature and extent of a victim's injuries, they are not the *only* type of photographic evidence that may be used for that purpose. It is well established that "[e]vidence is not rendered inadmissible because it is not conclusive. All that is required is that the evidence tend to support a relevant fact *even to a slight degree*, [as] long as it is not prejudicial or merely cumulative." (Emphasis added; internal quotation marks omitted.) *State* v. *Bonner*, 290 Conn. 468, 497, 964 A.2d 73 (2009). We address the claimed prejudicial effect of the challenged evidence in part II of this opinion.

[3] The defendant invites this court to "impose 'some constraints' on graphic images" by limiting the admissibility of "images that are of limited or no relevance and/or probative value." In support of his request, the defendant relies on Chief Justice Thomas G. Saylor's dissenting opinion in *Commonwealth* v. *Woodard*, 634 Pa. 162, 212–15, 129 A.3d 480 (2015), cert. denied, ___ U.S. ___, 137 S. Ct. 92, 196 L. Ed. 2d 79 (2016), and various scholarly articles. See, e.g., id., 213–15 (Saylor, C. J., dissenting) (recognizing that "decisions about admissibility may depend upon the individualized case circumstances, particularly in light of the uncertainties and emerging evidence," but suggesting that "appellate courts should impose some constraints upon the introduction of graphic photographs into the courtroom" by excluding, for example, "graphic, visceral portrayals of a dead child"); S. Bandes & J. Salerno, "Emotion, Proof and Prejudice: The Cognitive Science

of Gruesome Photos and Victim Impact Statements," 46 Ariz. St. L.J. 1003, 1015–29, 1055 (2014) (reviewing social science studies analyzing impact of gruesome photographs on deliberative process and noting that "[s]ome of the concerns raised by the studies . . . can be addressed by a variety of means, including jury instructions, expert testimony, rules on the handling or presentation of evidence, diverse juries, and judicial education, among others"). We see no reason to consider the need to promulgate further guidance of the kind suggested by the defendant because the photographs at issue in the present case, in our view, do not trigger the heightened concerns that are raised by Chief Justice Saylor. We offer no opinion about the desirability or wisdom of adopting such additional constraints under other circumstances.

_____