******************************************************

The "officially released" date that appears near the beginning of each opinion is the date the opinion will be published in the Connecticut Law Journal or the date it was released as a slip opinion. The operative date for the beginning of all time periods for filing postopinion motions and petitions for certification is the "officially released" date appearing in the opinion. In no event will any such motions be accepted before the "officially released" date.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Reports and Connecticut Appellate Reports. In the event of discrepancies between the electronic version of an opinion and the print version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest print version is to be considered authoritative.

The syllabus and procedural history accompanying the opinion as it appears on the Commission on Official Legal Publications Electronic Bulletin Board Service and in the Connecticut Law Journal and bound volumes of official reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced and distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.

******************************************************

STATE OF CONNECTICUT *v.* DURANTE BEST
(AC 38311)

Lavine, Mullins and Harper, Js.

*Argued April 5—officially released October 4, 2016*

(Appeal from Superior Court, judicial district of
Fairfield, Rodriguez, J.)

*Neal Cone*, senior assistant public defender, with
whom, on the brief, was *Lauren Weisfeld*, public
defender, for the appellant (defendant).

*Susann E. Gill*, supervisory assistant state's attorney,
with whom, on the brief, were *John C. Smriga*, state's

attorney, and *Margaret E. Kelley*, supervisory assistant state's attorney, for the appellee (state).

*Opinion*

HARPER, J. On the second day of evidence in his criminal trial, the defendant, Durante Best, filed a written request for a jury instruction of self-defense.[1] The trial court denied his request. Following the trial, he was convicted of one count of murder in violation of General Statutes § 53a-54a (a), two counts of attempt to commit murder in violation of General Statutes §§ 53a-49 and 53a-54a (a), two counts of assault in the first degree in violation of General Statutes § 53a-59 (a) (1), and criminal possession of a firearm in violation of General Statutes § 53a-217 (a). On appeal, he claims that the court improperly failed to instruct the jury on self-defense, and, therefore, that he was deprived of his constitutional right to establish a defense. We agree that he was entitled to an instruction of self-defense with respect to some, but not all, of the crimes of which he was convicted. Accordingly, we reverse in part and affirm in part the judgment of the trial court.[2]

"In determining whether the defendant is entitled to an instruction of self-defense . . . we must view the evidence most favorably to giving such an instruction." (Internal quotation marks omitted.) *State* v. *Terwilliger*, 294 Conn. 399, 408–409, 984 A.2d 721 (2009). Viewed in this light, the record reveals the following relevant facts, which the jury reasonably could have found. In May, 2006, the defendant was living in an apartment at 275 Jefferson Street in Bridgeport. He shared this apartment with his then girlfriend, Erika Anderson (Erika), and his stepbrother, Joseph Myers. On the afternoon of May 4, 2006, Erika had planned to attend a carnival at nearby Newfield Park with her daughter, Octavia Anderson (Octavia); Octavia's friend, Rogerlyna Jones; and Octavia's young son, Taki. Before Octavia arrived at the apartment, Erika and the defendant began to argue.

When Octavia and Jones arrived at 275 Jefferson Street, Octavia asked Jones to go to the door of the apartment to get Erika because she was preoccupied watching Taki, who was asleep. Jones knocked on the door, but nobody answered. Jones then returned to the car and informed Octavia that nobody answered, which surprised Octavia because she had spoken with Erika recently. Subsequently, Nelson Stroud, who was living in the basement area of 275 Jefferson Street at the time, informed Jones that the defendant and Erika were arguing in their apartment. Octavia asked Myers, who was sitting outside of the apartment, to watch Taki while she and Jones went to retrieve Erika. Without receiving permission from any of the occupants, Octavia and Jones entered the apartment.

Once they had entered the apartment, Octavia and Jones could hear the defendant and Erika arguing in their bedroom. Concerned for her mother, Octavia

began banging on the door and "told them to open up the f-ing door." Octavia banged on the bedroom door with a large plastic wrap holder several times and screamed at the defendant to open the door, but he did not comply. Instead, the defendant instructed her to "get the f-away from my door." Octavia continued to pound on the door and warned the defendant that "if you don't open the door [I'm] going to f-you up." Jones, who was also pounding on the door, ordered the defendant to open the door and also stated that she and Octavia had backup. Octavia admitted at trial that she and Jones uttered these warnings to the defendant clearly.

Having failed to convince the defendant to open the door, Octavia turned away from the bedroom door and searched for something to hit it with. At that moment, the door was opened, and the defendant opened fire. Jones was shot first. Just after Jones was shot, Octavia felt a burning in her chest and realized that she had been shot as well. Octavia and Jones ran back to Octavia's car, and Octavia drove them to nearby Bridgeport Hospital. Jones lost a substantial amount of blood during the car ride.

As Octavia and Jones were heading toward Octavia's car, Erika ran toward them. The defendant shot Erika, who eventually collapsed outside of the apartment. The defendant tried to take her to a hospital on his bike, but was unable to do so and fled. Emergency response personnel subsequently arrived and found Erika bleeding profusely. She was taken to Bridgeport Hospital where she was treated for several weeks. Jones died of her injuries. Erika and Octavia both survived, but sustained substantial injuries.

In an amended information dated June 6, 2007, the state charged the defendant with one count of murder as to Jones (count one); one count of attempted murder as to Erika and one count of attempted murder as to Octavia (counts two and three); one count of assault in the first degree as to Erika and one count of assault in the first degree as to Octavia (counts four and five); and criminal possession of a firearm (count six).

Evidence in the defendant's criminal trial began on September 5, 2007. On that day, the court stated on the record that it had received the state's written request to charge. The court also stated that it had granted the defendant a one day extension to submit his request. The following day, the defendant submitted his written request to charge, which contained a proposed charge of self-defense. The defendant stated that the evidentiary basis for this request was "[t]estimony from the alleged victims, [Erika and Octavia]." At the time this written request was submitted, neither Erika nor Octavia had testified. Immediately after the defendant filed his request, however, the state called Octavia and then Erika to testify.

The state also called Stroud and Tawana Myers (Tawana) to testify. Stroud was in his basement apartment at 275 Jefferson Street when he heard the defendant begin to argue with Erika. He testified that he heard Erika state that she wanted to leave, and he heard her plead with the defendant to stop hitting her. He also testified that he left his apartment on foot fifteen minutes after the argument began. As he was walking down Jefferson Street toward Central Avenue, he heard four gunshots from the apartment. Stroud turned and observed Octavia and Jones run from the house, enter their car, and drive off. He did not see Erika leave the house.

Tawana, the wife of Joseph Myers, was outside of 275 Jefferson Street on May 4, 2006. She testified that she heard the defendant and Erika arguing, and observed Octavia and Jones enter the house. She then heard argument followed by a "big boom," which she concluded was Octavia and Jones kicking in the door to the defendant's bedroom. Subsequently, she heard three or four gunshots fired in quick succession, and then observed Octavia and Jones flee from the house and drive off. Tawana observed Erika come out of the house after Octavia and Jones; she was bleeding badly from her chest and collapsed on the front porch as soon as she exited the house. After the defendant exited the house, Tawana did not hear any additional gunshots.

The state rested on September 10, 2007, and the defendant did not call any witnesses. The court then notified the parties that it would address the jury charge after the lunch recess. In addition, the court inquired whether the parties intended to file supplemental requests to charge. The state declined, and defense counsel indicated that he would review what he previously had submitted and make a decision after lunch.

That afternoon, the court held a charge conference in chambers. At the conclusion of this conference, the court stated on the record that it had discussed "all of the issues relating to the charge" with the parties and invited the parties to comment on the record. The state acknowledged that a charge conference occurred and offered no further comment. Defense counsel likewise acknowledged that a charge conference was held in chambers, but also took exception to the court's decision not to give a self-defense charge. The court noted the exception and offered the parties an opportunity to comment further. When both parties declined, the jury returned to the courtroom for the charge. The court did not give an instruction on self-defense . Thereafter, the jury found the defendant guilty of all charges.

On appeal, the defendant claims that the court improperly failed to give the jury an instruction of self-defense. He argues that the evidence presented during the trial supported such an instruction. Specifically, he

argues that Octavia's statement to the defendant that "if you don't open the door [I'm] going to f-you up," coupled with Jones' warning that the two "had backup" and the pounding on the door, provided an evidentiary basis for the jury reasonably to conclude that the defendant believed that Octavia and Jones were about to use deadly force against him.

In response, the state argues that the defendant's written request to charge was insufficient for two reasons. First, the state contends that the written request lacked an evidentiary basis to support a charge of self-defense. The state notes that the written request simply stated that the testimony of two witnesses, namely, Erika and Octavia, is the *source* of the evidence supporting the charge. In the state's view, the written request should have detailed the *specific evidence* that supported the defendant's proposed jury instruction rather than simply identifying the source of the evidence. Second, the state argues that the written request contained an incomplete and inaccurate statement of self-defense principles.[3] Specifically, the state claims that because the defendant used deadly physical force against the victims, the proposed jury instruction necessarily must have contained, but did not contain, a discussion of the use and limits of deadly physical force in defense of self. Alternatively, the state claims that, even if the defendant was entitled to an instruction of self-defense as to Octavia and Jones, he was not entitled to such a charge with respect to his conviction of attempted murder and assault for his conduct against Erika. The state relies on Erika's testimony that after Octavia and Jones were shot, she ran toward them and was shot by the defendant near a tree in the yard. On the basis of this testimony, the state claims that Erika was shot when she was fleeing from the defendant and, therefore, that there is no evidentiary basis to support a charge of self-defense as to her.

Before we begin our analysis, we note that the state's primary position—that the defendant's written request to charge is insufficient—implicates the reviewability of the defendant's claim. The state acknowledges that the failure to set forth a detailed factual basis for a proposed charge is treated by the courts as a failure to preserve that claim, but also argues that this failure "should disentitle a defendant to the charge." Although we find no support for the state's latter proposition, we will consider the issue of reviewability. As stated previously, the defendant's written request to charge identifies "[t]estimony from the alleged victims, [Erika and Octavia]," as the basis for the proposed instruction.

Our rules of practice set forth the steps necessary to preserve a claim that a trial court improperly failed to give a jury instruction. Practice Book § 42-16 provides in relevant part: "An appellate court shall not be bound to consider error as to the giving of, or the failure to

give, an instruction unless the matter is covered by a written request to charge or exception has been taken by the party appealing immediately after the charge is delivered. Counsel taking the exception shall state distinctly the matter objected to and the ground of exception. The exception shall be taken out of the hearing of the jury." See also *Lin* v. *National Railroad Passenger Corp.*, 277 Conn. 1, 13, 889 A.2d 798 (2006).

Practice Book § 42-18 governs the form and content of such requests. Practice Book § 42-18 provides that written requests shall contain "a single proposition of law clearly and concisely stated with the citation of authority upon which it is based, *and the evidence to which the proposition would apply.* . . ." (Emphasis added.) This court previously has held that the requirements of Practice Book § 42-18 are satisfied "only if the proposed request contains such a complete statement of the essential facts as would have justified the court in charging in the form requested." (Internal quotation marks omitted.) *State* v. *Arreaga*, 75 Conn. App. 521, 525, 816 A.2d 679 (2003).

In the present case, the defendant's written request does not state any essential facts or evidence, but instead merely identifies two witnesses, Erika and Octavia, whom the defendant claims would produce that evidence via testimony. Although the court required the parties to submit their proposed charges before all of the evidence had been presented, it clearly gave counsel the opportunity to supplement their proposed charges after the evidence was submitted. The defendant failed to take advantage of this opportunity. Because the defendant's request fails to set forth a complete statement of essential facts justifying the proposed charge, we agree with the state that it did not comply with Practice Book § 42-18.[4] Consequently, we conclude that the defendant has failed to preserve his claim for review.[5]

Nevertheless, the defendant argues that his claim is reviewable under *State* v. *Golding*, 213 Conn. 233, 239–40, 567 A.2d 823 (1989); see *In re Yasiel R.*, 317 Conn. 773, 781, 120 A.3d 1188 (2015) (modifying third condition of *Golding*). We agree. In his main brief, the defendant has requested review of an unpreserved claim pursuant to *Golding*, presented a record that is adequate for our review, and has alleged a violation of a fundamental constitutional right, namely, the right to proper jury instructions on the elements of self-defense. See *State* v. *Elson*, 311 Conn. 726, 755–56, 91 A.3d 862 (2014). Therefore, we will review the defendant's unpreserved constitutional claim.

Turning to the merits of the defendant's claim, under the remaining two prongs of *Golding*, the defendant must show that the alleged constitutional violation exists and deprived him of a fair trial, and that the state has failed to demonstrate harmlessness of the alleged

constitutional violation beyond a reasonable doubt. See *In re Yasiel R.*, supra, 317 Conn. 781. For the reasons we now discuss, we conclude that both of these prongs have been satisfied and, therefore, that the defendant was entitled to an instruction on the elements of self-defense as to his conduct toward Octavia and Jones, but not as to his conduct toward Erika.

The following legal principles are relevant to our analysis of the third prong of *Golding*. "[T]he fair opportunity to establish a defense is a fundamental element of due process of law . . . . This fundamental constitutional right includes proper jury instructions on the elements of self-defense so that the jury may ascertain whether the state has met its burden of proving beyond a reasonable doubt that the assault was not justified. . . . Thus, [i]f the defendant asserts [self-defense] and the evidence indicates the availability of that defense, such a charge is obligatory and the defendant is entitled, as a matter of law, to [an] . . . instruction [on self-defense]. . . . Before an instruction is warranted, however, [a] defendant bears the initial burden of producing sufficient evidence to inject self-defense into the case. . . . To meet that burden, the evidence adduced at trial, whether by the state or the defense, must be sufficient [if credited by the jury] to raise a reasonable doubt in the mind of a rational juror as to whether the defendant acted in self-defense. . . . This burden is slight, however, and may be satisfied if there is any foundation in the evidence [for the defendant's claim], no matter how weak or incredible . . . ." (Citations omitted; internal quotation marks omitted.) *State* v. *Edwards*, 234 Conn. 381, 388, 661 A.2d 1037 (1995).

Adopting the version of Erika and Octavia's testimony most favorable to the defendant, we conclude that the evidence presented to the jury was sufficient to raise the question of whether the defendant acted in self-defense. To begin with, Octavia admitted that neither she nor Jones had received permission from any occupant to enter the defendant's apartment. Once inside, Octavia began pounding on the door to the defendant's bedroom with an object and shouting orders to him, such as "open up the f-ing door." When the defendant did not comply, Octavia and Jones threatened the defendant, stating that if he did not open the door, they would "f-you up." Thus, the defendant was faced with intruders in his home who were pounding on his door and leveling threats, which Octavia admitted were leveled clearly for the defendant to hear. Additionally, the defendant was faced with an unknown number of intruders, as Jones warned the defendant, while pounding on his bedroom door, that she and Octavia "had backup." At oral argument before this court, the state conceded that the statements made by Octavia and/or Jones could have been construed as threats. Because this evidence, if believed, may have been sufficient to have raised a question in the mind of a rational juror

as to whether the defendant had shot Octavia and Jones in self-defense, he was entitled to a jury determination of his claim. The trial court, therefore, improperly rejected the defendant's request for an instruction on self-defense as to his crimes toward Octavia and Jones.

With regard to the fourth prong of *Golding*, we note simply that the state has not argued that the court's failure to provide an instruction was harmless beyond a reasonable doubt. Thus, the state has failed to meet its burden to demonstrate that such an error was harmless.

Having concluded that the defendant was entitled to an instruction as to Octavia and Jones, we turn to the state's contention that he was not entitled to an instruction as to counts two and four of the information, charging the defendant with attempted murder and assault in the first degree, respectively, for his conduct toward Erika. We agree with the state.

The following additional facts are relevant to this issue. Erika testified during trial. On direct examination, she testified that after Octavia and Jones were shot, she went toward them and was shot by the defendant near a tree in the yard. On cross-examination, defense counsel asked Erika a series of questions about what occurred in the bedroom. For example, defense counsel asked Erika if she went for a gun when the two were arguing. She answered no. Defense counsel then asked Erika if she wrestled with the defendant over the gun, and if the gun went off accidentally as they were fighting to control it. She answered no to both questions. She also denied even reaching for the gun. Defense counsel also asked Erika if she had a box cutter on her keychain, which she admitted. When defense counsel asked if she went after the defendant with the box cutter, she denied it.

The state relies on Erika's prior testimony that she was shot outside and contends that she was fleeing when the defendant assaulted her. The defendant points out that Tawana's testimony that all gunshots were fired in the house in quick succession contradicts Erika's account. Regardless of where Erika was shot, we conclude that there is no evidence in the record to justify a self-defense charge as to her. None of the evidence adduced at trial indicates that Erika posed a threat to the defendant. Erika denied each question posed which might have suggested that she exhibited threatening behavior, such as whether she threatened the defendant with a box cutter or tussled with the defendant for the gun. Although there is no dispute that the defendant and Erika were arguing, there is no evidence that Erika harmed or threatened to harm the defendant during the course of this argument. In the absence of any such evidence, we conclude that, on remand, the defendant is not entitled to a jury instruction of self-defense for his conduct toward Erika.

The judgment is reversed only as to counts one, three, and five of the amended information and the case is remanded for a new trial on those counts; the judgment is affirmed in all other respects.

In this opinion the other judges concurred.

[1] General Statutes § 53a-19 (a) provides in relevant part: "[A] person is justified in using reasonable physical force upon another person to defend himself or a third person from what he reasonably believes to be the use or imminent use of physical force, and he may use such degree of force which he reasonably believes to be necessary for such purpose; except that deadly physical force may not be used unless the actor reasonably believes that such other person is (1) using or about to use deadly physical force, or (2) inflicting or about to inflict great bodily harm."

[2] We note at the outset that "[u]nder General Statutes § 53a-19 (a) . . . a claim of self-defense may be invoked only to justify the actor's *use* of reasonable physical force. Self-defense does not apply if a defendant's use of force is not in issue." (Emphasis in original.) *State* v. *Bailey*, 209 Conn. 322, 348, 551 A.2d 1206 (1988). Because the use of force is not an issue in a prosecution for criminal possession of a firearm pursuant to § 53a-217 (a), the defendant is not entitled to an instruction of self-defense as to his conviction of criminal possession of a firearm. See id. (holding self-defense inapplicable to crime of carrying a pistol without a permit pursuant to General Statutes § 29-35). Accordingly, we affirm the judgment as to count six of the state's amended information charging the defendant with criminal possession of a firearm.

[3] The legal principles set forth in the defendant's written request to charge were as follows: "The defendant claims that his use of force was justified as self-defense. This requires that I state to you the applicable rules of law on the use of force in self-defense. Self-defense is a legal defense to the use of force which would otherwise be criminal. This does not mean, however, that the defendant must prove the defense of self-defense. The burden to prove guilt beyond a reasonable doubt remains on the state, which means that the state must disprove the defense beyond a reasonable doubt.

"A person is justified in using reasonable physical force upon another person to defend himself from what he reasonably believes to be the imminent use of physical force, and he may use such degree of force which he reasonably believes to be necessary for that purpose. However, a person is not justified in using physical force self-defense when, with intent to cause physical injury to another person, he provokes the use of physical force by that other person; nor is a person justified in using physical force in self-defense when he is the initial aggressor.

"First of all, the defendant must actually believe that he is faced with the imminent use of physical force upon him. He must in fact have such a belief.

"Second, that belief must be reasonable. A reasonable belief is one that a reasonably prudent person, viewing the situation from the defendant's perspective, and in the same circumstances as the defendant was in, would have. It is not an irrational belief, nor is it a belief that is not justified by all the circumstances existing then and there. Nor is it necessarily the belief that the defendant in fact had; it is a belief that was reasonable, from the perspective of a reasonable person in the defendant's circumstances.

"Third, acting with that reasonable belief, the amount and degree of force that he uses must be reasonable. It must be that degree of force that a reasonable person, in the same circumstances, viewed from the perspective of the defendant, would use, and no more. If the degree of force used is excessive or unreasonable in view of all the circumstances, the defendant is not entitled to the defense of self-defense.

"Finally, a person is not justified in using physical force if, intending to cause physical injury to the other person, he provokes the use of physical force by that other person he is the initial aggressor. The initial aggressor may not necessarily be the person who first used physical force. The initial aggressor may be the first person who threatened to use physical force.

"Whether the defendant had the requisite belief, whether the defendant's belief was reasonable, whether the degree of force he used was reasonable, and whether he provoked the use of physical force, are questions of fact for you to determine from the evidence."

[4] The state also contends that the defendant's written request to charge is inadequate because it fails to set forth a complete and accurate statement of the legal principles of self-defense. Because we conclude that the defen-

dant's written request is inadequate for its failure to state a proper evidentiary basis, we need not address this additional contention. Accordingly, we offer no opinion concerning whether the defendant should have differentiated deadly force because it is irrelevant to our analysis.

[5] Although the defendant failed to submit an adequate written request, we note that he did take exception to the court's refusal to charge the jury on self-defense. The defendant's exception, like his written request to charge, did not conform to our rules of practice. Practice Book § 42-16 provides in relevant part that "[c]ounsel taking the exception shall state *distinctly* the matter objected to and the ground of exception. . . ." (Emphasis added.) "The requirement that the claim made by the exception be raised distinctly means that it must be so stated as to bring to the attention of the court the precise matter on which its decision is being asked." (Internal quotation marks omitted.) *State* v. *Wright*, 62 Conn. App. 743, 755, 774 A.2d 1015 (2001), cert. denied, 256 Conn. 919, 774 A.2d 142 (2001).

In the present case, defense counsel failed to state the ground of his exception on the record, but merely stated that he took exception to the court's failure to give an instruction on self-defense. Our rules of practice require defendants to state distinctly both the matter objected to and the ground of such an exception. Although the defendant stated distinctly that he was objecting to the failure to give a self-defense instruction, he did not set forth any grounds supporting this exception.

───────────────────────────