******************************************

The "officially released" date that appears near the beginning of each opinion is the date the opinion will be published in the Connecticut Law Journal or the date it was released as a slip opinion. The operative date for the beginning of all time periods for filing postopinion motions and petitions for certification is the "officially released" date appearing in the opinion.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Reports and Connecticut Appellate Reports. In the event of discrepancies between the advance release version of an opinion and the latest version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest version is to be considered authoritative.

The syllabus and procedural history accompanying the opinion as it appears in the Connecticut Law Journal and bound volumes of official reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced and distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.
******************************************

# LONNIE ANDERSON *v.* COMMISSIONER OF CORRECTION
## (AC 42515)

Lavine, Bright and Beach, Js.*

*Syllabus*

The petitioner, who previously had been convicted of the crimes of assault in the first degree with a firearm and assault of a peace officer with a firearm, sought a writ of habeas corpus, claiming, inter alia, that his trial counsel, B, rendered ineffective assistance by failing to present certain evidence to support his request that the trial court instruct the jury on self-defense. The petitioner's conviction stemmed from an incident in which state marshals, wearing police attire and badges, were attempting to serve a capias warrant on the petitioner at the front door of his residence. When the marshals informed him that they intended to take him into custody, the petitioner drew a firearm and began firing at the marshals. The marshals were unarmed and fled from the residence. The petitioner argued on appeal that B should have introduced the testimony of three individuals, J, H, and L, who had been present at various points in the confrontation and that, if he had done so, the trial court would have given the requested instruction on self-defense. The habeas court rendered judgment denying the habeas petition and, thereafter, denied the petition for certification to appeal, and the petitioner appealed to this court. *Held* that the habeas court did not abuse its discretion in denying the petition for certification to appeal; it was not debatable among jurists of reason that B's performance did not prejudice the petitioner as the petitioner failed to demonstrate that there was a reasonable probability that the outcome of his criminal trial would have been different had B presented the testimony of J, H, and L, as the facts they would have testified to would not have justified a self-defense instruction, in light of the evidence that the marshals were readily identifiable, there was no evidence that any marshal unholstered or brandished a firearm while trying to take the petitioner into custody, and it was undisputed that at the time the petitioner was firing his gun, the marshals were fleeing from the petitioner.

Argued May 20—officially released October 20, 2020

*Procedural History*

Amended petition for a writ of habeas corpus, brought to the Superior Court in the judicial district of Tolland, geographical area number nineteen, and tried to the court, *Sferrazza, J.*; judgment in part denying the petition; thereafter, the court denied the petition for certification to appeal, and the petitioner appealed to this court. *Appeal dismissed.*

*Vishal K. Garg*, for the appellant (petitioner).

*Timothy F. Costello*, senior assistant state's attorney, with whom, on the brief, were *John C. Smriga*, former state's attorney, and *Emily Dewey Trudeau*, assistant state's attorney, for the appellee (respondent).

*Opinion*

BRIGHT, J. The petitioner, Lonnie Anderson, appeals, following the denial of his petition for certification to appeal, from the judgment of the habeas court denying count one of his amended petition for a writ of habeas corpus.[1] On appeal, the petitioner contends that the habeas court abused its discretion by denying his petition for certification to appeal because he properly had established in his petition for a writ of habeas corpus that his constitutional right to the effective assistance of trial counsel had been violated during his criminal trial when a jury found him guilty of assault in the first degree with a firearm and assault of a peace officer with a firearm. We conclude that the habeas court did not abuse its discretion in denying the petition for certification to appeal and, accordingly, dismiss the petitioner's appeal.

The record reveals the following relevant underlying facts, which the jury at the petitioner's criminal trial reasonably could have found, and procedural history that are relevant to our consideration of the petitioner's claim. On October 6, 2009, State Marshals Arthur Quinn, Charles Valentino, Joseph Butler, and Richard Krueger went to 434 Indian Avenue in Bridgeport to serve a capias warrant authorizing the marshals to take the petitioner into custody for failing to appear in a child support case. The marshals arrived at approximately 7:45 p.m. Butler and Krueger went to the rear of the address. Quinn and Valentino walked to the front door, and Valentino knocked on the door. Quinn and Valentino wore clothing that identified them as state marshals and displayed badges. Neither marshal carried a firearm. Valentino, who was wearing a marshal's hat, was in possession of the capias warrant and wore a utility belt on which were attached handcuffs, gloves, Mace, and a police baton.

An eight year old relative of the petitioner answered the door, and the marshals asked to speak with the petitioner. The child left and returned with Lyman Anderson, the petitioner's brother. Utilizing a photograph of the petitioner, Quinn and Valentino recognized that Lyman Anderson was not the subject of the capias warrant. Lyman Anderson went back into the home, and the petitioner came to the front door.

The petitioner arrived at the front door armed with a nine millimeter, semiautomatic pistol that he kept concealed in his sweatpants. Upon inquiry about his identity, the petitioner falsely replied that he was John Anderson. Recognizing the petitioner, the marshals confronted him with the photograph, informed him that he had missed a court date, and stated that they intended to take him into custody. The petitioner took a step back, drew his pistol, and chambered a round. Valentino

spotted the firearm and shouted "[g]un!" The marshals ran off the doorstep and headed in opposite directions.

Valentino heard five to six gunshots and perceived a bullet pass close by his head. As Valentino sought cover behind a parked van, he heard more shots. Valentino observed, through the vehicle's windows, the petitioner standing on the top step of the stoop and shooting toward Quinn. Valentino observed the petitioner discard an ammunition magazine and insert a second magazine into the pistol.

During his rapid retreat, Quinn also heard gunshots. Quinn realized that a bullet had struck his left foot. Quinn sustained a second gunshot wound to his right forearm. A neighbor emerged from his home with a towel to help stop the bleeding from Quinn's arm. Also hearing gunshots, Butler and Krueger ran toward the front of the residence from their position at the rear of the residence.

After shooting at Quinn and Valentino, the petitioner returned to the residence. Lyman Anderson attempted to calm the petitioner and suggested that he go outside with his hands raised to surrender. The petitioner, at first, told Lyman Anderson that he did not want to do so because he was worried that the marshals would fire at him.

A few minutes later, Bridgeport Police Officer Hugo Stern received a call, via a police broadcast, about the incident. Stern arrived at the Indian Avenue residence and saw state marshals hiding near a red car. Stern drew his weapon and saw someone matching the description of the shooter. That person stood on the top step of the entryway. Stern aimed his gun at that person, who was the petitioner, and ordered the petitioner to raise his hands. The petitioner complied.

As Stern cautiously approached the petitioner, he noticed that the petitioner wore an empty holster on his right hip. Stern ordered the petitioner to lie slowly on the ground, and the petitioner complied. Stern then directed the petitioner to spread his arms and legs. The petitioner appeared to cooperate. After Stern holstered his own weapon and attempted to handcuff the petitioner, the petitioner resisted by rising into a crouch and becoming combative. Stern saw the petitioner reach into the waistband of his pants to retrieve an item. Bridgeport Police Officer Bobby Jones came to Stern's assistance, and the officers subdued the petitioner. As the officers rolled the petitioner over, they observed that the petitioner was lying on top of a semi-automatic handgun. The officers seized the weapon. Subsequent testing demonstrated that the weapon was the same gun from which several shots had been fired at the scene. Additionally, the weapon was loaded with a magazine full of cartridges.

The state charged the petitioner with two counts

of attempt to commit murder in violation of General Statutes §§ 53a-49 and 53a-54a (a), one count of assault in the first degree in violation of General Statutes § 53a-59 (a) (5), one count of assault of a peace officer in violation of General Statutes § 53a-167c and, for each count, with the commission of a class A, B, or C felony with a firearm in violation of General Statutes § 53-202k.[2]

During the jury trial, the petitioner's trial counsel, J. Patten Brown III, filed a request to charge in which Brown asked the court to provide the pattern jury instruction on self-defense pursuant to General Statutes § 53a-19. The court declined Brown's request to charge the jury on self-defense on the ground that there was insufficient evidence to support the theory that the officers were approaching the petitioner in such a manner prior to the shooting that would justify a self-defense charge.

The jury found the petitioner guilty of assault in the first degree and assault of a peace officer, and his sentence was enhanced on each count pursuant to § 53-202k for the commission of a class A, B, or C felony with a firearm. The petitioner was acquitted of the remaining charges. The court sentenced the petitioner to a total effective sentence of eleven years of incarceration followed by five years of special parole.

On September 30, 2011, the petitioner filed an appeal to the Appellate Court. Brown represented the petitioner at the criminal trial and on direct appeal. On July 26, 2012, Brown withdrew the direct appeal after consulting with the petitioner. On March 10, 2015, the self-represented petitioner filed a petition for a writ of habeas corpus and, on August 31, 2018, the petitioner filed the operative amended petition for a writ of habeas corpus. In the amended petition, the petitioner asserted the following claims: (1) his constitutional right to the effective assistance of trial counsel was violated and (2) his constitutional right to the effective assistance of appellate counsel was violated.

As to his claim of ineffective assistance of trial counsel, the petitioner argued that Brown failed to present evidence that was available to him to support his self-defense theory. Specifically, the petitioner argued that Brown's performance was deficient because he had failed to present the testimony of Bridgeport Police Officer Juan Hernandez, Bridgeport Police Officer Bobby Jones, and Lyman Anderson. The petitioner argued that he was prejudiced by Brown's failures because, had the evidence been presented, the trial court would have given the requested instruction on self-defense and it is reasonably probable that the jury would have concluded that the state failed to disprove self-defense beyond a reasonable doubt.

On November 8, 2018, the habeas court denied the

amended petition with regard to the petitioner's claim that the petitioner's constitutional right to the effective assistance of trial counsel had been violated. In its memorandum of decision, the court discussed the testimony on which the petitioner's claim is based. "The petitioner contends that potential testimony could have been elicited from Lyman Anderson, Officer Jones, and Officer Juan Hernandez that at least one of the marshals at the scene was armed. Further, Lyman Anderson could have testified that [the petitioner] discharged his pistol toward Quinn and Valentino in response to one of the

marshal's attempts to barge into the residence and grab the petitioner."

As to Lyman Anderson, the court found: "It was the prosecution that called Lyman Anderson to testify at the criminal trial. Lyman related that, when he went to the front door that his young nephew had opened, he saw four uniformed marshals, one of whom carried a handgun on his person. This testimony, however, contrasted with the statement Lyman gave to the police on the evening of the shooting. In that recorded statement, given a few hours after the incident, Lyman reported that there were two marshals on the doorstep, neither of whom appeared armed with a gun.

"In that recording, Lyman apparently recounted that he saw the petitioner raise his gun and begin firing at the marshals. At the criminal trial, Lyman acknowledged that he had told this version to the police, but he now denied its accuracy. His trial testimony reflected that he was not present near the entryway and was elsewhere in the house when he heard gunfire.

"Both in his recorded statement to the police and in his testimony at the criminal trial, Lyman recalled overhearing his brother lie about his identity. Lyman agreed in that testimony that, once the marshals ascertained he was not Lonnie, he went upstairs, and the petitioner then came downstairs to speak with the marshals.

"At the habeas trial, Lyman testified that Attorney Brown and the defense investigator interviewed him before the criminal trial. He avows that he told them a version of the incident that contradicted both his statement to the police and his eventual trial testimony. He now swears that the marshals never mentioned that they were there to execute the capias; that he saw a marshal attempt to bull his way through the front door, which was only slightly open; that the marshal tried to grab for the petitioner; that four or five marshals were there and all were armed with handguns; and that the marshals initiated the physical conflict." (Emphasis omitted.)

The court then discussed the testimony of Jones and Hernandez. "Officers Bobby Jones and Juan Hernandez, Jr., also testified at the habeas trial. They stated that

one of the four marshals had a firearm, but neither identified Quinn nor Valentino as that marshal. Importantly, no witness ever stated that a marshal brandished a handgun while at the doorstep. All witnesses concurred on every occasion that the petitioner began firing at the marshals as they fled, as fast as they could, upon seeing the petitioner's pistol.''

On the basis of the evidence presented to it, the habeas court concluded the following: "Thus, even if the testimony of Officers Jones and Hernandez supported a finding that some, unidentified marshal had a handgun on his person, no evidence would have warranted a self-defense instruction under all the circumstances of this case. The jury necessarily determined by its verdict that the state had proved, beyond a reasonable doubt, that Marshals Quinn and Valentino were reasonably identifiable peace officers under . . . § 53a-167c (a) and that the petitioner *intended* to prevent [them] . . . from performing [their] duties . . . while such peace officer[s] [were] acting in the performance of [their] duties. Nor does the habeas testimony of Lyman Anderson assist the petitioner in that regard. As mentioned above, Lyman denied being present during the incident in his criminal trial testimony. His only contribution could be that one of the two marshals at the doorstep possessed a gun on his person but not that that marshal ever drew the weapon.

"It must be kept in mind that General Statutes § 53a-23 commands that a 'person is not justified in using physical force to resist an arrest by a reasonably identifiable peace officer . . . whether such arrest is legal or illegal.' While a person is justified in defending oneself from 'egregiously unlawful conduct—such as an unprovoked assault' by a peace officer, § 53a-23 'was intended to require an arrestee to submit to an *arrest*, even though he believes . . . that the arrest was . . . unlawful.' *State* v. *Davis*, 261 Conn. 553, 568 [804 A.2d 781] (2002) . . . . General Statutes § 53a-3 (9) defines 'peace officer' to include state marshals.

"In the petitioner's case, there is no claim that taking him into custody under the capias was illegal. Nor is there any contention that the marshals were employing excessive force. Assuming, arguendo, that one of the marshals tried to grab hold of the petitioner's arm, § 53a-23 would negate the viability of a self-defense claim because every arrest entails some degree of physical restraint. Self-defense, in an arrest situation, only justifies the use of defensive force to ward off abusive violence; a claim which never arose in the petitioner's case. Consequently, the court determines that the petitioner has failed to meet his burden of proving either prong of the [*Strickland* v. *Washington*, 466 U.S. 668, 687, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984)] standard with respect to Attorney Brown's trial assistance.'' (Emphasis in original.) On November 8, 2018, the habeas court

denied the amended petition with regard to the petitioner's claim that his constitutional right to the effective assistance of trial counsel had been violated, and, on November 20, 2018, the habeas court denied the petitioner's petition for certification to appeal. This appeal followed.

The petitioner claims that the habeas court erred in concluding that he failed to show both that Brown's representation was deficient and that he was prejudiced by Brown's errors. In particular, he argues that the evidence presented at the habeas trial proved that Brown had evidence available to him to show that Valentino was armed and that Valentino and Quinn grabbed for the petitioner, which caused him reasonably to fear for his life, thereby entitling him to a self-defense instruction. We are not persuaded.

We first set forth the standard of review relevant to our resolution of this appeal. "Faced with the habeas court's denial of certification to appeal, a petitioner's first burden is to demonstrate that the habeas court's ruling constituted an abuse of discretion. . . . A petitioner may establish an abuse of discretion by demonstrating that the issues are debatable among jurists of reason . . . [the] court could resolve the issues [in a different manner] . . . or . . . the questions are adequate to deserve encouragement to proceed further. . . . The required determination may be made on the basis of the record before the habeas court and applicable legal principles. . . .

"In determining whether the habeas court abused its discretion in denying the petitioner's request for certification, we necessarily must consider the merits of the petitioner's underlying claims to determine whether the habeas court reasonably determined that the petitioner's appeal was frivolous. In other words, we review the petitioner's substantive claims for the purpose of ascertaining whether those claims satisfy one or more of the three criteria . . . adopted by this court for determining the propriety of the habeas court's denial of the petition for certification. Absent such a showing by the petitioner, the judgment of the habeas court must be affirmed. . . .

"We examine the petitioner's underlying claim[s] of ineffective assistance of counsel in order to determine whether the habeas court abused its discretion in denying the petition for certification to appeal. Our standard of review of a habeas court's judgment on ineffective assistance of counsel claims is well settled. In a habeas appeal, this court cannot disturb the underlying facts found by the habeas court unless they are clearly erroneous, but our review of whether the facts as found by the habeas court constituted a violation of the petitioner's constitutional right to effective assistance of counsel is plenary. . . .

"In *Strickland* v. *Washington*, [supra, 466 U.S. 687], the United States Supreme Court established that for a petitioner to prevail on a claim of ineffective assistance of counsel, he must show that counsel's assistance was so defective as to require reversal of [the] conviction . . . . That requires the petitioner to show (1) that counsel's performance was deficient and (2) that the deficient performance prejudiced the defense. . . . Unless a [petitioner] makes both showings, it cannot be said that the conviction . . . resulted from a breakdown in the adversary process that renders the result unreliable. . . . Because both prongs . . . must be established for a habeas petitioner to prevail, a court may dismiss a petitioner's claim if he fails to meet either prong. . . .

"To satisfy the performance prong [of the *Strickland* test] the petitioner must demonstrate that his attorney's representation was not reasonably competent or within the range of competence displayed by lawyers with ordinary training and skill in the criminal law. . . . [A] court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the [petitioner] must overcome the presumption that, under the circumstances, the challenged action might be considered sound trial strategy." (Internal quotation marks omitted.) *Bagalloo* v. *Commissioner of Correction*, 195 Conn. App. 528, 533–34, 225 A.3d 1226, cert. denied, 335 Conn. 905, 226 A.3d 707 (2020). "To satisfy the prejudice prong, a claimant must demonstrate that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." (Internal quotation marks omitted.) *Breton* v. *Commissioner of Correction*, 325 Conn. 640, 669, 159 A.3d 1112 (2017). "A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Strickland* v. *Washington*, supra, 466 U.S. 694. "In its analysis, a reviewing court may look to the performance prong or to the prejudice prong, and the petitioner's failure to prove either is fatal to a habeas petition." (Internal quotation marks omitted.) *Delvecchio* v. *Commissioner of Correction*, 149 Conn. App. 494, 500, 88 A.3d 610, cert. denied, 312 Conn. 904, 91 A.3d 906 (2014).

Accordingly, in order to determine whether the habeas court abused its discretion in denying the petition for certification to appeal, we must consider the merits of the petitioner's underlying claim that his criminal trial counsel provided ineffective assistance. With the foregoing principles in mind, we now address the petitioner's claim that Brown failed to present sufficient evidence that was available to him at the petitioner's criminal trial to support his request that the court instruct the jury on self-defense.

We first set forth the well settled substantive principles underlying a defendant's claim of self-defense.

"[T]he fair opportunity to establish a defense is a fundamental element of due process of law . . . . This fundamental constitutional right includes proper jury instructions on the elements of self-defense so that the jury may ascertain whether the state has met its burden of proving beyond a reasonable doubt that the assault was not justified. . . . Thus, [i]f the defendant asserts [self-defense] and the evidence indicates the availability of that defense, such a charge is obligatory and the defendant is entitled, as a matter of law, to [an] . . . instruction [on self-defense]. . . . Before an instruction is warranted, however, [a] defendant bears the initial burden of producing sufficient evidence to inject self-defense into the case. . . . To meet that burden, the evidence adduced at trial, whether by the state or the defense, must be sufficient [if credited by the jury] to raise a reasonable doubt in the mind of a rational juror as to whether the defendant acted in self-defense. . . . This burden is slight, however, and may be satisfied if there is any foundation in the evidence [for the defendant's claim], no matter how weak or incredible . . . ." (Internal quotation marks omitted.) *State* v. *Best*, 168 Conn. App. 675, 686, 146 A.3d 1020 (2016), cert. denied, 325 Conn. 908, 158 A.3d 319 (2017). "However low the evidentiary standard may be, it is nonetheless a threshold the defendant must cross. The defendant may not ask the court to boost him over the sill upon speculation and conjecture." (Internal quotation marks omitted.) *State* v. *Montanez*, 277 Conn. 735, 750, 894 A.2d 928 (2006).

"[I]n order sufficiently to raise self-defense, a defendant must introduce evidence that the defendant reasonably believed his adversary's unlawful violence to be imminent or immediate. . . . Under . . . § 53a-19 (a), a person can, under appropriate circumstances, justifiably exercise repeated deadly force if he reasonably believes both that his attacker is using or about to use deadly force against him and that deadly force is necessary to repel such attack. . . . The Connecticut test for the degree of force in self-defense is a subjective-objective one. The jury must view the situation from the perspective of the defendant. Section 53a-19 (a) requires, however, that the defendant's belief ultimately must be found to be reasonable. . . . Moreover, the evidence must be such that the jury must not have to resort to speculation in order to find that the defendant acted in justifiable self-defense." (Citations omitted; internal quotation marks omitted.) *State* v. *Lewis*, 245 Conn. 779, 811, 717 A.2d 1140 (1998).[3]

On appeal, the petitioner argues that (1) Jones and Hernandez could have testified that they had observed a marshal carrying a gun, in contravention of the testimony of Quinn and Valentino that neither of them was armed, and (2) Lyman Anderson could have testified that the marshals attempted to barge through the door into the petitioner's apartment and attempted to grab

the petitioner, an action that led to the petitioner shooting at the marshals.[4] The petitioner argues that the aforementioned evidence would have supported the theory of self-defense that Brown had pursued. The petitioner argues further that there is a reasonable probability that the outcome of the criminal trial would have been different and more favorable to the petitioner if Brown had presented such evidence. We disagree.

Although the habeas court concluded that the petitioner failed to establish both deficient performance and prejudice, it is clear to us that the focus of the court's analysis was on the prejudice prong. The court accepted that there was evidence before it that at least one of the marshals attempting to apprehend the petitioner was armed. Although the petitioner argues that the court was incorrect in concluding that it could not identify the armed marshal, that issue was not particularly germane to the court's analysis.[5] The court also accepted, for purpose of its analysis, Lyman Anderson's testimony that Quinn and Valentino attempted to grab the petitioner before the petitioner began firing. Nevertheless, the court concluded that the evidence from Jones, Hernandez, and Lyman Anderson not offered during the criminal trial would have made no difference because the facts to which they would have testified would not have justified a self-defense instruction or possibly affected the outcome of the criminal trial. The court reached this conclusion for three reasons. First, there was no evidence that any marshal unholstered or brandished a firearm while trying to take the petitioner into custody. Second, the evidence was clear, and the jury necessarily found, that Quinn and Valentino were clearly identifiable as marshals when they confronted the petitioner, and there was no evidence that they used excessive force when trying to detain the petitioner or that they were acting illegally in enforcing the capias. Third, Quinn and Valentino were both fleeing from the petitioner "as fast as they could," when he began firing at them.

The petitioner does not dispute that no marshal ever removed a gun from his holster. Nor does he dispute that Quinn and Valentino were fleeing from the petitioner when he fired at them. He also does not dispute Lyman Anderson's statements, to the police, at the petitioner's criminal trial, and at the habeas trial, that Quinn and Valentino were readily identifiable as marshals. He similarly does not dispute Lyman Anderson's testimony that the petitioner confirmed that he knew that the individuals at whom he fired his weapon were marshals. Furthermore, the petitioner conceded in his principal brief that "the jury accepted that the marshals were reasonably identifiable peace officers based on the criminal trial evidence . . . ."

The only argument raised by the petitioner in response to these facts is that had the jury heard the

evidence presented at the habeas trial, it would have concluded that Quinn and Valentino were not identifiable as marshals. The problem with the petitioner's argument is that the only person who testified that he did not recognize marshals at the scene of the shooting was Jones, and that testimony occurred at the criminal trial.[6] In fact, Jones' testimony at the habeas trial undermines the petitioner's argument because he testified that he saw a marshal pointing a gun while hiding behind a parked vehicle after the shooting had occurred.[7] Similarly, Hernandez testified at the habeas trial that he saw a marshal with a gun when he arrived on the scene.[8] There simply was no evidence presented at the habeas trial to support a claim that Quinn and Valentino were not identifiable as marshals.

On the basis of the habeas court's factual findings, which are fully supported by the record, we agree with the habeas court's conclusion that the petitioner failed to prove any prejudice arising from Brown's failure to present evidence from Jones, Hernandez and Lyman Anderson as suggested by the petitioner. First, the habeas court was correct that, even assuming arguendo that one of the marshals tried to grab the petitioner's arm, because Quinn and Valentino were reasonably identified as peace officers and there was no evidence that they used excessive force, § 53a-23[9] would negate the viability of a self-defense claim.

The petitioner makes three arguments to the contrary, none of which we find persuasive. First, the petitioner argues that § 53a-23 does not necessarily preclude a self-defense instruction, even if the marshals were reasonably identifiable as peace officers, if there was evidence that they entered the petitioner's apartment without a warrant. In support of this argument, the petitioner relies on a single sentence in *In re Adalberto S.*, 27 Conn. App. 49, 58, 604 A.2d 822, cert. denied, 222 Conn. 903, 606 A.2d 1328 (1992), wherein this court stated: "[A]n unlawful warrantless intrusion into the home creates a privilege to resist arrest." The court in *In re Adalberto S.*, cited to our Supreme Court's holding in *State* v. *Gallagher*, 191 Conn. 433, 442, 465 A.2d 323 (1983), as support for this statement. The problem for the petitioner is that our Supreme Court later overruled *Gallagher* in part and held that "the right to challenge an illegal entry remains a privilege, provided no new crime is committed." *State* v. *Brocuglio*, 264 Conn. 778, 793, 826 A.2d 145 (2003). Furthermore, our Supreme Court noted in *Brocuglio* that, even under *Gallagher*, the right to resist a warrantless entry into one's home was limited: "Under *Gallagher*, the defendant here had a common-law right to resist, *short of committing an assault*, an illegal entry by the police into his home." (Emphasis added.) Id., 795. Consequently, any right the petitioner might have had to resist a warrantless entry into his home by the marshals unquestionably did not include firing on them.

The petitioner further argues that neither the state nor the court raised § 53a-23 as an issue at the petitioner's criminal trial, so there was no basis for the habeas court to rely on it in this case. We disagree. Because the court in the criminal trial concluded that the facts otherwise did not warrant a self-defense instruction, it was not required to consider the statutory bar in § 53a-23. Furthermore, there is nothing in the wording of the statute that makes its application optional.

Alternatively, the petitioner argues that had the jury seen the evidence presented at the habeas trial, it would have concluded that Quinn and Valentino were not reasonably identifiable as marshals. For the reasons previously discussed in this opinion, such an argument is contrary to the facts and without merit.

Additionally, the fact that Quinn and Valentino indisputably were fleeing, as fast as they could, from the petitioner when he fired on them precluded any claim of self-defense. The evidence presented at the petitioner's criminal trial, and not disputed before the habeas court, was that the marshals, who were in the process of trying to take the petitioner into lawful custody, immediately retreated from the petitioner when he pulled out his firearm, and they were in flight at the time the petitioner fired his gun at them. There simply is no basis for the court to give a self-defense instruction when the only evidence presented to the jury is that the marshals were fleeing from the petitioner when the petitioner fired the weapon. See, e.g., *State* v. *Erickson*, 297 Conn. 164, 197, 997 A.2d 480 (2010); *State* v. *Lewis*, 220 Conn. 602, 619–20, 600 A.2d 1330 (1991); *Commonwealth* v. *Miranda*, 484 Mass. 799, 811–13, 146 N.E.3d 435 (2020); *State* v. *Gonzalez*, 143 N.M. 25, 30, 172 P.3d 162 (2007); *State* v. *Niewiadowski*, 120 N.M. 361, 366, 901 P.2d 779 (App.), cert. denied, 120 N.M. 184, 899 P.2d 1138 (1995). Put another way, in light of the undisputed evidence that Valentino and Quinn were fleeing when the petitioner shot at them, there was insufficient evidence "to raise a reasonable doubt in the mind of a rational juror as to whether the defendant acted in self-defense." (Internal quotation marks omitted.) *State* v. *Best*, supra, 168 Conn. App. 686.

On the basis of the evidence presented at the petitioner's criminal trial, the jury, even if it had heard all of the evidence presented to the habeas court, reasonably could not have found that, at the time the petitioner fired his gun at the marshals, it was objectively reasonable for the petitioner to have believed both that the marshals were about to use deadly physical force or inflict great bodily harm on him, and that it was necessary for the petitioner to shoot at the marshals to prevent such conduct.

Accordingly, the petitioner has failed to prove that there is a reasonable probability that the outcome of

his criminal trial would have been different had Brown performed as the petitioner claims he should have. Furthermore, we conclude that it is not debatable among jurists of reason that Brown's performance did not prejudice the petitioner and, thus, the habeas court did not abuse its discretion in denying the petitioner's petition for certification to appeal.

The appeal is dismissed.

In this opinion the other judges concurred.

* The listing of judges reflects their seniority status on this court as of the date of oral argument.

[1] The habeas court granted relief as to count two of the amended petition which alleged that the petitioner's constitutional right to the effective assistance of appellate counsel had been violated. The habeas court concluded that counsel had performed deficiently by withdrawing the appeal and that the petitioner was prejudiced by the withdrawal. Consequently, the habeas court reinstated the petitioner's right to directly appeal the underlying conviction. See *Kaddah* v. *Commissioner of Correction*, 299 Conn. 129, 133 n.7, 7 A.3d 911 (2010). This aspect of the habeas court's ruling is not at issue in this appeal.

[2] "[Section] 53-202k is a sentence enhancement provision and not a separate crime. . . . [Our Supreme Court] [has] interpreted § 53-202k to require that the jury, rather than the court, determine whether a firearm was used in the commission of the underlying felony." (Citation omitted.) *State* v. *Nash*, 316 Conn. 651, 656 n.6, 114 A.3d 128 (2015). General Statutes § 53-202k provides: "Any person who commits any class A, B or C felony and in the commission of such felony uses, or is armed with and threatens the use of, or displays, or represents by his words or conduct that he possesses any firearm, as defined in section 53a-3, except an assault weapon, as defined in section 53-202a, shall be imprisoned for a term of five years, which shall not be suspended or reduced and shall be in addition and consecutive to any term of imprisonment imposed for conviction of such felony."

[3] General Statutes § 53a-19 (a) provides in relevant part: "[A] person is justified in using reasonable physical force upon another person to defend himself . . . from what he reasonably believes to be the use or imminent use of physical force, and he may use such degree of force which he reasonably believes to be necessary for such purpose; except that deadly physical force may not be used unless the actor reasonably believes that such other person is (1) using or about to use deadly physical force, or (2) inflicting or about to inflict great bodily harm."

[4] The petitioner also asserts in his principal brief that, "although the marshals claimed to be identifiable as marshals, none of the other witnesses at the scene recognized them as marshals." This claim is without merit. As the habeas court noted, Lyman Anderson, both in his recorded statement to the police and in his testimony at the petitioner's criminal trial stated that Quinn and Valentino were recognizable as marshals from their clothing. At the habeas trial, he testified that they were clearly wearing police attire, had badges on, shirts that said police and one of the marshals had a shirt that said marshal. In addition, Lyman Anderson testified at the criminal trial that the petitioner did not want to go outside after firing his gun because he was worried that the *marshals* would fire back at him. Furthermore, the petitioner's reliance on Jones' statements at the criminal trial that after the shooting he only saw civilians and not marshals; see footnote 6 of this opinion; makes little sense. That testimony is inconsistent with and contradicted by the evidence from the habeas trial, on which the petitioner relies, that Jones saw a marshal with a gun. It is illogical to argue that the jury could rely both on Jones' testimony that he saw a marshal pointing a gun and also his testimony that he did not see any marshals. Thus, the habeas court's factual finding that Quinn and Valentino reasonably were identifiable as marshals was not clearly erroneous.

[5] The petitioner argues that because Valentino testified during the petitioner's criminal trial that he hid behind a red vehicle as the petitioner fired on him and Quinn, and Jones testified at the habeas trial that he saw a marshal pointing a gun while hiding behind a red vehicle, the marshal pointing the gun could only have been Valentino. At the criminal trial, Valentino testified that he initially ran toward the red vehicle and then ended up hiding behind a silver van.

[6] Jones provided the following relevant testimony at the petitioner's criminal trial. Jones saw an injured "male dressed civilian" near a tree and there were other people who appeared to be civilians with the individual, whom he could not recognize. Additionally, Jones did not see any state marshals while he was at the location of the incident.

[7] During the habeas proceeding, Jones testified to the accuracy of a police report, which stated that Jones personally observed a state marshal taking cover behind a red vehicle with a gun drawn and pointed at the 434 Indian Avenue residence. Jones testified that he did not know which marshal had the gun and that he could not recall anything about the person who had the gun. Upon inquiry about his prior statement at the criminal trial that everybody appeared to be civilians, Jones stated that, "under that level of stress, we can't distinguish between a civilian and a plainclothes state marshal."

[8] Hernandez swore to the accuracy of a supplemental report stating that he saw one of the marshals with a gun. Hernandez testified that he was unable to identify which marshal had the gun and that he could not recall whether he was able to identify the people who were outside as marshals or whether he was able to identify anybody as marshals.

[9] General Statutes § 53a-23 provides in relevant part: "A person is not justified in using physical force to resist an arrest by a reasonably identifiable peace officer [or] special policeman appointed under section 29-18b . . . whether such arrest is legal or illegal."